Criminal Case Template




COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



GUADALUPE HERNANDEZ,
INDIVIDUALLY AND AS NEXT
FRIEND OF JOSHUA HERNANDEZ,
A MINOR,


 Appellant,


v.


SYLVIA MILAM,


 Appellee.

§


§


§


§


§

No. 08-01-00481-CV


Appeal from the


346th District Court


of El Paso County, Texas


(TC# 99-3816)

MEMORANDUM OPINION


 

 Guadalupe Hernandez, acting individually and as next friend of her son, Joshua,
brought this negligence action against Sylvia Milam. Hernandez alleged that she and
Joshua were injured as a result of an automobile accident in which Milam's vehicle rear-ended the vehicle operated by Hernandez. The jury returned a verdict in favor of Milam. 
The trial court therefore entered a take-nothing judgment. Hernandez appeals, arguing
that the evidence is factually insufficient to support the verdict. We affirm.

Standard of Review

 When a party attacks the factual sufficiency of an adverse finding regarding an
issue on which she had the burden of proof, she must demonstrate that the adverse finding
is against the great weight and preponderance of the evidence. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001). To resolve a factual sufficiency challenge, we
must consider both the evidence supporting the finding and the evidence supporting a
contrary finding. Piatt v. Welch, 974 S.W.2d 786, 789 (Tex. App.--El Paso 1998, no
pet.). It is for the jury to determine the weight to be given the testimony and to resolve
any conflicts in the evidence. Id. We cannot substitute our judgment for that of the jury,
even if we would find a fact contrary to that found by the jury, provided that the jury
finding is supported by probative evidence and is not against the great weight and
preponderance of the evidence. Id. We will overturn the jury's verdict only if it is so
contrary to the great weight and preponderance of the evidence as to be manifestly unjust. 
Id.

The Jury Charge

 The court submitted two questions to the jury. The first question asked whether
"the negligence, if any, of [Milam] proximately cause[d] the occurrence in question?" 
The second question asked how much money would compensate Hernandez "for her
injuries, if any, resulting from the occurrence in question?" The jury answered "No" to
the first question and therefore did not reach the second question.

 Hernandez argues that the first question inquired whether there was a causal nexus
between Milam's conduct and the accident, while the second question inquired whether
there was a causal nexus between the accident and Hernandez's injuries. Because the jury
only answered the first question, Hernandez argues that the issue on appeal is whether the
evidence is factually sufficient to establish that the accident was not caused by Milam's
negligence. She asserts that evidence regarding whether the accident caused her any
injuries is irrelevant.

 Milam counters that the evidence is factually sufficient to support a finding that
Hernandez did not suffer a compensable injury as a result of the accident. She argues that
the verdict can be upheld on that basis.

 We will assume for the purposes of argument that Hernandez's interpretation of
the jury charge is correct. Accordingly, we will review the evidence that tends to prove or
disprove that Milam's negligence caused the accident.

The Evidence

 At the time of the accident, Hernandez was driving a Ford F-150 truck. Milam
was driving a Pontiac Sunbird. It is undisputed that it was raining at the time and that it
had been raining most of the day. Hernandez testified that she was stopped at a red light,
when she "felt like a real bad impact on the back of [her] truck." According to
Hernandez, the impact was so severe that her neck "popped," her body "twisted," and the
truck was pushed forward approximately eight feet. She stated that after the accident,
Milam's car was lodged under the bumper of the truck. She testified that Milam
apologized to her and said, "'It's my fault. My brakes didn't want to work.'" Hernandez
also claimed that Milam told her that the truck was not damaged and tried to discourage
her from calling the police. Hernandez testified that while she was stopped at the red
light, she was not aware of what was going on behind her.

 Milam testified that the accident occurred on a two-lane, one-way road. Although
the speed limit was fifty miles per hour, she was traveling at thirty miles per hour because
the road was wet from the rain. She saw the traffic light turn red when she was about
one-fourth of a mile from the intersection. Milam stated that her brakes had been
working properly up to that point and that she had no reason to believe the brakes did not
work. She attempted to apply the brakes, but "[t]hey didn't take." She was not sure
whether the wheels kept rolling or the brakes locked, causing her to hydroplane. Milam
denied that she applied the brakes too late to avoid the accident. She stated that her car
was "skidding" and "sliding," but that she tried to keep the car under control. Plaintiff's
counsel asked Milam, "[I]sn't it true that you did not apply your brakes correctly causing
your vehicle to start sliding and therefore strike Ms. Hernandez's vehicle?" Milam
responded, "I didn't know if there was a certain way to apply them." She denied that the
way in which she applied the brakes caused the car to start sliding.

 Milam admitted that she knew that she was not stopping and that she would hit
Hernandez's truck. There was a railing to her right. Plaintiff's counsel questioned her
about why she did not steer into the left lane to avoid Hernandez's vehicle. The
following colloquy occurred:

 Q: [Y]ou did not get into the left lane in order to avoid hitting Ms.
Hernandez. Isn't that correct?


 A: No, sir, because I'll hit her or I'll hit somebody else.


 Q: But there was no vehicle right next to you?


 A: Oh, there was a line waiting for the stop sign [sic]. There was no
vehicle with me coming at the same time.


 Q: Are you saying that there was a line on the left lane?


 A: Yes, sir.


 Q: That was--was there another vehicle right next to Ms. Hernandez's
vehicle?


 A: No, sir, it was further up.


. . .


 Q: Okay. Since you were slowing down, isn't it true that you could
have gone into the left lane because there was a vehicle further up?


 A: Yes, sir, I could have.


 Q: To avoid hitting Ms. Hernandez?


 A: Yes, but I would have hit somebody else.


 Q: So you feel that even if you had moved over to the left lane that you
would have still hit the vehicle that was farther up in the left lane?


 A: No doubt because there was cars coming and they would eventually
hit me.


 Q: So you're saying you would have gotten hit from the rear?


 A: Possibly.


 Q: But let's--just to make this clear, you felt that if you had gone to the
left lane that you still would have struck the vehicle that was farther
up in the left lane?


 A: Yes, sir.


 Milam testified that she was going less than ten miles per hour when she hit
Hernandez's truck. Her car went under the truck's bumper, but then "bumped" back. 
She stated that it was possible that she pushed the truck forward when she hit it. The lens
on Milam's right headlight was broken and the hood was "pushed up" or "folded" behind
that light. Milam denied that she tried to discourage Hernandez from calling the police,
but she admitted that she told Hernandez that the truck was not damaged.

 The truck was owned by Jose Duran. He testified that as a result of the accident,
the truck's left rear bumper was "bent up towards the quarter panel" and the quarter panel
was cracked. He described the damage to the truck as minimal. Hernandez testified that
in addition to the damage described by Duran, the truck's trailer hitch was also damaged
in the accident.

Discussion

 The mere occurrence of a rear-end collision does not establish that the driver of the
following car was negligent. DeLeon v. Pickens, 933 S.W.2d 286, 289 (Tex. App.--Corpus Christi 1996, writ denied). The plaintiff must prove specific acts of negligence on
the part of the following driver. Till v. Thomas, 10 S.W.3d 730, 733 (Tex. App.--Houston
[1st Dist.] 1999, no pet.). Hernandez argues that the great weight and preponderance of
the evidence establishes that Milam was negligent in failing to timely or properly apply
the brakes, failing to operate her vehicle at the proper rate of speed for the conditions,
failing to turn her vehicle to the left or right to avoid the collision, and failing to keep a
proper lookout.

 Hernandez asserts that although Milam refused to admit that she applied the brakes
improperly, causing her car to hydroplane, Milam's own testimony establishes that fact. 
Milam testified that she did not know whether the wheels kept rolling or the brakes
locked. Even if her testimony established that Milam's car hydroplaned, that fact would
not establish that Milam was negligent. See Friday v. Spears, 975 S.W.2d 699, 701 (Tex.
App.--Texarkana 1998, no pet.) (holding that testimony that defendant's car hydroplaned
into the plaintiff's car was some evidence supporting an unavoidable accident
instruction); Clark v. Cotten, 573 S.W.2d 886, 888 (Tex. Civ. App.--Beaumont 1978, writ
ref'd n.r.e.) (same).

 Hernandez argues that the evidence supports findings that Milam did not timely
apply the brakes and that she was going too fast. Milam testified that she was traveling at
twenty miles per hour below the speed limit, that she began braking approximately one-fourth of a mile from the intersection, and that the brakes failed to stop the car. The jury
could infer from this testimony that Milam was traveling at an appropriate rate of speed,
that she timely applied the brakes, that the brakes did not work, and that she slid into
Hernandez's car because of the wet road. Although the jury could have discredited
Milam's testimony and inferred that she was going faster or applied the brakes later, its
failure to draw these inferences is not against the great weight and preponderance of the
evidence.

 Hernandez also claims that Milam must have been going too fast because she
testified that if she had gone into the left lane she would have hit a vehicle that was
stopped further down the road in that lane. Hernandez argues that if Milam were really
going as slowly as she testified, she would not have hit the vehicle stopped in the left
lane. Again, we do not believe the jury's failure to draw this inference is against the great
weight and preponderance of the evidence. We also note that Milam testified that there
were cars approaching from behind in the left lane and that she was afraid they would
collide with her if she steered into that lane.

 Finally, Hernandez asserts that Milam's testimony as a whole establishes that she
did not keep a proper lookout for others' safety. As noted above, however, the jury
apparently accepted Milam's testimony regarding her rate of speed and her attempt to
stop her car.

Conclusion

 We conclude that the jury's finding is not so contrary to the great weight and
preponderance of the evidence as to be manifestly unjust. Accordingly, we affirm the
judgment of the trial court.


 SUSAN LARSEN, Justice

March 13, 2003


Before Panel No. 1

Larsen, McClure, and Chew, JJ.